We will hear argument next in Case 11-338, Decker v. Northwest Environmental Defense Center, and Georgia-Pacific v. Northwest Environmental Defense Center. Mr. Bishop. Thank you, Mr. Chief Justice, and may it please the Court. There is a straightforward ground for reversal here that rests on a standard application of deference principles to EPA's treatment of slawmortar. But before we get into that, congratulations to your clients on getting almost all the relief they're looking for under the new rule issued on Friday. Thank you for calling it to our attention. Thank you. The problem with that rule is that it puts into place something that EPA has been telling the courts throughout this litigation, that in the stormwater rule where EPA refers to standard industrial classification 2411, that what it is referring to is solely the four identified point sources in the silver cultural rule, rock crushing and so on. In this case, any D.C. respondent argues that the statute, the language of the statute, which is that discharges that are associated with industrial activity must have NIPTES permits, prevents EPA from doing that. But there was no ruling in the court of appeals. The court of appeals did not rule on the statute, whether the statute mandates that these logging roads be covered. No, it did not. It did not. That is an argument that Respondents have made in this Court. And so that's not a point that this Court could resolve in the first instance. Well, I don't think that's right. The Respondent can defend its judgment on grounds other than those that were the basis of the Ninth Circuit decision. Yes, you can do that, but this Court is a court of review, not first view, and we don't take questions that haven't been aired below. Well, there's an additional reason why we don't think that the rule here moots the issue. Let's assume that there's a petition for review. I think that's a fairly safe assumption, that some environmental groups argue that the new rule is impermissible because it's at odds with the language of the statute, an argument that I think is near frivolous, but that I think will be — predictably will be made. The rule is prospective. What we have is a judgment from the Ninth Circuit that says that we were in violation for decades by not having permits. And— Roberts, it's an unusual situation for us to rule in a case where the issue has ongoing significance, and that's taken away, and what we would be doing is, when there is a new rule, we would be considering quite a lot of difficult issues to determine what the old rule was so that you can unravel what the Ninth Circuit has upheld. Well, let me argue.  Maybe. Sotomayor, I thought that Case Law was fairly clear that when the EPA changes its rules in your favor that they can't — the Court can't impose penalties for a past violation. Well, I wish it were so clear. Certainly we think that that is the case. What they have asked for below is penalties, attorneys' fees, and remediation of environmental harm. Now, we think that under Laid Law, they shouldn't be able to get any of those three things. Now, this only happened on Friday, so I can't claim that I've done complete research on the point, but it — you know, I do think that there doesn't appear to be any law on the application of Laid Law to a claim for a mediation. Is this a — is this a new rule that they — I, too, haven't had much of a chance to look at it, but is this a new rule, or is it an amendment of the existing rule? It's an amendment of the existing rule, but what it does is to put into place into the rule exactly what EPA has been saying throughout this litigation. There is nothing new in the rule. So this is something that EPA has been saying in the litigation that we think is entitled to our deference as a result of that. Now it's in the rule, so it gets Chevron deference. But the — Are you sure you want what you're asking for? What if we go ahead and decide this case and rule against you? Well, we're hoping that you rule with us. And certainly on the basis of this rule, on the basis of this rule, you have to understand that their challenge to this rule is the claim that the words associated with industrial production of that activity must be interpreted by EPA to include harvesting activities and the — the moving of the logs out of the harvest area. Now, I suppose that your clients and others similarly situated, or I guess it would be the Respondents, can challenge the new rule, right? Yes.  But the question is, if the Court decides this case in our favor under the stormwater rule, then that will preclude a large part of the basis for the challenge to the new rule. It's squarely in front of this Court. Mr. Fisher has made the argument here.     It can't be under the stormwater rule. Congress completely revamped the Clean Water Act's approach to stormwater in 1987. And it made clear that as the default, point source stormwater is regulated by the States with NIPTES permits required only for discharges that are associated with industrial activity and a few other categories. And those statutory terms, industrial activity and associated with, are both ambiguous. And with those words, Congress left EPA with discretion to determine what activities count as industrial, and it's in keeping with dictionary definitions for EPA to have categorized activities like law, banking, retail, agriculture, and silviculture as nonindustrial. But, Mr. Bishop, as Justice Ginsburg said, that question was not decided below. And in the context of this case, which of course was very different when it was briefed, Mr. Fisher spent a grand total of two pages, and rightly so. It wasn't — it was not the main issue in the case then. So would we really be doing something, you know, good practice to decide this issue without really any briefing on it and without a decision below? Well, I think there is briefing on it. I mean, both parties briefed it. It gets two pages because it's a near-frivolous argument under the case law, I think. But the fact is, if you don't— Well, that seems to be quite fair. It's two pages because it wasn't decided below and because the question in the case was very different with a different regulation. The issue is before this Court, if the Court doesn't decide the issue, then we go back, we have to fight for years about remedies, about the appropriateness of remedies for this adjudicated past violation under Laid Law. Laid Law has some very complex law that's developed. You wouldn't have to do anything if the Court vacated the decision below. Then you wouldn't be facing anything. Obviously, if the Court held the case was moot, then we'd like the vacator. But in addition, there's going to be a choice. The challenge to the new rule is that if you're entitled to it, then you have to vacate  If you're entitled to it, then there's nothing you don't have, anything hanging over your head as a result of the prior decision. Well, what's left at that point is another 5 or 6 years of litigation under the new rule on an issue that is briefed in this Court, before this Court, and I think relatively easy to decide under the scope of the new rule.  issue? The industrial activities issue. I mean, the rest of this case has become very complex, I think, because the Government has raised the Seminole Rock argument that no one's ever heard of before. Mr. Fisher has introduced an argument about whether the 1375B categories, this case falls within those categories. But there's a simple way to decide this case, and that is under this stormwater rule, EPA had the discretion to determine what activities are industrial, and it determined that timber harvesting is not industrial. It defined immediate access roads in a way that does not cover these roads, even if it were industrial. And these are terms, the term industrial is one that is ambiguous. The term associated with industrial activity is one that admits of degree. It's like the word minimize. Sotomayor, how do we avoid, under your reading, assuming we agreed with you what the rule says, that there's a difference between logging roads and access roads? The other side raises a lot of question about whether these, in fact, are access roads or not. So do we need to do we have to reach that issue? The public rule, you don't have to reach that issue, because the EPA has decided that the timber harvesting activity is not industrial. In the rule, implementing this rule with a multi-sector general permit for industrial activity, EPA said, quote, harvesting activities, including loading and initial transport from an active harvest site, are not required to be covered under the stormwater permits. You know, it's been perfectly clear in when it promulgated the rule, it said that the reference to SIC 24 was a reference to sawmills, planing mills, and other mills. When in the briefs in this case, it explained the reference to SIC 2411, it said by not excluding SIC 2411, EPA intended to reference only the four categories of silvicultural activities already defined as point sources. So EPA has been absolutely clear that timber harvesting is not industrial activity and therefore not catchily associated. Sotomayor It may not be, but these are pipes, ditches, and channels, which the CWA explicitly defines as point sources that are not part of the harvesting. By definition, they're not. They're, you're saying, public roads and not access roads. Remember that the stormwater rule applies to point sources. The default position under the stormwater rule is that point sources do not require NPDES permits. And then Congress said there are certain categories that do, and one of those is discharges that are associated with industrial activity. EPA has said that under these terms, associated with industrial activity, industrial activity, neither the timber harvest nor the roads, the initial loading and initial transport from an active harvest site are not required to be covered by stormwater permits. It says in the rule that immediate access roads are the only things that are covered. It explains in the preamble to the 1976 rule that that means on-plant roads that are dedicated for use by an industrial facility, not public roads. These are public roads. These are used by hunters, fishermen, off-road vehicle enthusiasts, bird watchers. These are fairly heavily trafficked public roads that are used for a few weeks every few decades for logging activities. And so these are not, EPA has been very clear, the sort of ---- Kennedy, am I correct or incorrect that a considerable number of these roads, or a significant number of these roads, were built initially by the logging industry? Yes, some of them surely, surely were. It's a little hard for you to say when these were built by the logging industry and presumably maintained in some respect by the logging industry to say, oh, well, these are used by hunters and so forth. But they are public roads. They're owned by the counties or they're owned by the State. These two particular roads that we're talking about here have been there between 50 and 75 years. They run by the river. There's a school bus pull-off on one of them because there are houses by the side of this road. These are quintessential public roads that are used by loggers from time to time. Are they built there? Are there other roads that are built by us? Yes, but they are public roads maintained by us under contracts with the State only during the period when we are using them for logging activity and otherwise maintained by the State. So the — and we think, to come back to your initial question, Chief Justice, about whether this can be decided without getting into these other complex issues, that you don't have to — if you decide this case under the stormwater rule, it's — and taking at face value what the Ninth Circuit said, which is the rule itself is not clear, we see the Ninth Circuit set a reference here to SIC 2411, which is logging. We see this reference to immediate access roads. So at that point, we — you look at what EPA has said, and EPA's explanation in its no intention on EPA's part to cover the channeled runoff alongside these roads. Kagan Mr. Bishop, could I — I'm sorry that I don't understand this well enough yet, but could I understand what's still at stake for you in the case, put aside the question of whether the new rule is valid or not, all right? And what — what do you have riding on whether the Ninth Circuit's decision is correct at this point? Mr. Bishop Well, if there is a — if there is a vacator so that we don't have to worry about remedies below — Kagan So which remedies are you worried about? Mr. Bishop Well, the remedies that — we're obviously not worried about injunctive relief. We are worried about the relief that they've asked for for past — supposed past violations, which is penalties, attorneys' fees, and I think the more complex one under the case law is remediation for environmental harm, which the case law just doesn't seem to address under — under laid law. So we are worried about those, and principally what we would like to do is to get sorted out once and for all here an argument that otherwise would drag through the courts for the next five or six years under this rule, putting the whole industry into a good deal of uncertainty that we think is unwarranted, if I can reserve the remainder of my time.  Mr. Stewart Mr. Chief Justice, and may it please the Court, on Friday the EPA Administrator signed a new rule that amends EPA's existing regulatory definition of the term stormwater discharge associated with industrial activity. The new rulemaking specifically disapproves the Ninth Circuit's decision in this case and states explicitly that the only facilities under SIC Code 2411 that are industrial are rock crushing, gravel washing, log sorting, and log storing. Mr. Kagan Were you as surprised as we were to learn about that final rule? Mr. Stewart No, we were not. Mr. Kagan When did you learn that the final rule would be issued on Friday? Mr. Stewart I learned on Friday morning that the final rule would be issued. I learned on Friday afternoon that the final rule had been issued. Within five minutes of that time, I alerted counsel for both the Petitioners and — Mr. Kagan You had no idea before Friday that this was coming out? Mr. Stewart I knew that it was a strong possibility — I knew that it was a strong possibility that it would come out. The EPA had issued a notice in September of proposed rulemaking. There was a notation on OMB's website in early November to the effect that the rule had been transmitted for final approval by OMB. Mr. Kagan In early November? Mr. Stewart In early November. Mr. Kagan Maybe in the future you could let us know when something as definite as that comes. There were 875 pages on the merits briefing in this case, and if we knew that the final rule was imminent, we could have rescheduled the case for April or something along those lines. Mr. Stewart I'm sorry, Your Honor. We did explain in the opening brief that the rule had been issued. Roberts Oh, I know that there was a proposed rule. Is it your experience that proposed EPA rules become final within a couple of months? Mr. Stewart No, I think — well, I think this happened more quickly than it usually does, but I think we intended respect for the Court's processes rather than disrespect. Obviously, it's suboptimal for the new rule to be issued the Friday before oral argument, but it would have been even worse, I think, from the standpoint of the parties and the Court's decision-making processes if the rule had been issued a week or two after the Court heard oral argument. Roberts Well, maybe, and it would have been best if we had known about this in early November. Mr. Stewart All right. With respect to the impact of the rule on this case, the new rule was not intended to change the meaning of the preexisting definition, and in our view it renders the case smooth. And really the point of issuing the new rule— Sotomayor With his points about the extant remedies of attorney's fees and remediation, why are those moot? Mr. Stewart Well, I think the question of attorney's fees, if the Ninth Circuit's decision was vacated on the ground that the case would become moot, attorney's fees are available under the Clean Water Act in citizen suits only to prevailing or substantially prevailing parties. And I don't see any way that Respondent could make a claim to be a prevailing or substantially prevailing party when at the end of the day it got no relief. Now, with respect to questions of remediation and particularly of civil penalties, the Court in Steel Company and Laid Law addressed the circumstances under which civil penalties would — could and could not be awarded in citizen suits. And the Court in Steel Company said that in citizen suits, a citizen plaintiff lacks standing to seek civil penalties as a remedy for past violations because the citizen derives no benefit from payment of the penalties into the treasury. In Laid Law, the Court held that where there is a prospect of recurring violations or ongoing violations, the citizen plaintiff does have standing to seek civil penalties as a deterrent to future illegality. Robertson Do you — are you saying that the private companies would not be liable for civil penalties even though the alleged violation was ongoing at the time of the district court litigation? Stewart That's correct. That even if — if by the time the — the suit was wound up, there was no prospect of an ongoing or future violation because EPA had amended the rule to make clear that the conduct was lawful, there would be no future illegality to deter. Robertson Well, can I stop you just for a moment? EPA made clear that the conduct was not unlawful. We have a new regulation. The fact that they have issued a new regulation doesn't mean that the reading — doesn't mean that that's a demonstration that the prior conduct under the old regulation was lawful. Now, I know you've taken the position that it was not, but you've got a court of appeals decision saying it was. Stewart That's correct. And if we actually had a civil penalty award issued by the district court in the first instance, it might be a more complicated question whether that award should be vacated. But the district court ruled in the Petitioner's favor there was never any civil penalty award. And so if the question is, can the district court at some future stage of this case enter a civil penalty award, under Laid Law, the only justification for that in a citizen suit would be to deter illegal conduct that might be thought to be possible after the civil penalty award was issued. And that would have to be based on the assumption that the Ninth Circuit decision was wrong. Stewart It would not have to be based on the assumption that the Ninth Circuit decision was wrong at the time that it was entered. That is, even if EPA had done something that was explicitly characterized as a change in the law, if EPA had issued a rulemaking that said what Petitioners had been doing was unlawful up to this point, but we've decided that it shouldn't be unlawful and therefore we're amending the rule to make it legal, if EPA had done that, there would still be no prospect of future illegality, assuming that the rule is taken to be valid. And therefore, although in an EPA enforcement action there might be a possibility of getting monetary awards for past misconduct, because that's something the government can do, the citizens' only stake in the matter would be to deter future illegality. Scalia What if the rule is held invalid? I mean, we don't know the answer to that question until this rule is challenged and there is ultimately – I'm sure it will be challenged because their position is that the – this rule contradicts the statute. So how does that factor into your analysis? Stewart It certainly is possible that the rule will be challenged, but as Petitioners have emphasized in their brief, and we agree, the proper forum for adjudicating challenges to the validity of an EPA regulation is through a suit brought against EPA based on the administrative record. That is, a citizen's suit against the Petitioners. Scalia I understand that, but my point is until that suit is concluded, you don't know whether there is a possibility of future violation or not, do you? Stewart You don't know. But I think at this point the prospect that the EPA rule would be both challenged and vacated is sufficiently speculative that it would be out of keeping with general principles of mootness for the Court to go on to decide the question of what the old rule meant. And really – Kagan You said true also of the remediation piece of this. You said that at this point, even if we understand this as a change in law, the plaintiffs would not be entitled to fines. Would they also not be entitled to any kind of remediation? Stewart I think we would want to study that a little further. The general rule certainly is that injunctive – the propriety of injunctive relief is determined on the basis of the law in effect at the time of the Court's decision. And under the duly promulgated rule, once the rule took effect, that would be to the effect that the discharges from stormwater runoff are not covered. And an order requiring remediation would be a form of prospective injunctive relief. It would address— Kennedy Is it your submission that we should issue an order vacating this moot or issue an order for the court of appeals to consider whether it's moot? Stewart I think either one would be— Kennedy What is your submission? Stewart Our preference would be that the court issue an order vacating as moot, but it would also be an appropriate decision to leave that to the court of appeals in the first instance. And again, EPA's objective in this was to obviate the need to decide Beck's questions concerning the meaning of the old rule. That is, EPA has said for nearly 40 years that it doesn't believe that NIPTI's addressing the dangers to water quality that are posed by these sorts of discharges. And— Roberts I'm having trouble seeing how we can dismiss it as moot when there would remain pending claims for civil penalties and injunctive relief, which you've already said you want to take a closer look at, and attorneys' fees. Now, you seem fairly confident that they'll lose on those, but you felt pretty confident that you'd win on this. Stewart Well, I think the one piece that we would want to take a closer look at is the specific question of remediation for past harm. That is, concrete steps on the ground to undo the results of past discharges. The other two pieces of it— Kagan It seems strange that you would — there would be an order of remediation to undo the results of past discharges when at this point the law going forward is go ahead and discharge. Stewart I think that's correct. As I say, we haven't specifically focused on this question, but my instinct is that an order of remediation would be an aspect of prospective injunctive relief that would be governed by the general rule that injunctive relief is to be determined under the law at the time of the Court's decisions. But with respect to the other two elements of relief, I think those can be easily dealt with as a matter of law. That is, to the extent that they are seeking an injunction ordering that no further discharges occur without a permit, then clearly the propriety of that sort of injunction would be determined under the new rule and it wouldn't be available. And I think late law is clear that the only basis that a citizen has for seeking civil penalties is to deter future violations, not to punish prior violations. Roberts Is this something that, in terms of mootness, we should evaluate under the voluntary cessation doctrine? Stewart No, I don't believe so, because here the basis for mootness is not that the defendants in the suit have promised to change their ways. It's that EPA has issued a new regulation to make the Roberts Well, I thought EPA has changed its ways. Stewart Well, EPA is not the defendant in the case. So even if this were viewed as a change in ways, it wouldn't be voluntary cessation. Roberts Thank you, counsel. Mr. Fisher. Fisher Mr. Chief Justice, and may it please the Court, it seems to me in light of the recent events that the most appropriate course for this Court is to simply dismiss this case as improvidently granted. If this Court had reached a ‑‑ had gotten a cert petition under the circumstances present right now, it seems to me there would be three very strong reasons simply just to deny the petition. First of all, because EPA in its rulemaking on Friday afternoon itself says that the Ninth Circuit decision has ‑‑ cancels out any impact of the Ninth Circuit decision on the ground moving forward. Second of all, the case is interlocutory in posture. Remember, we're just on a reversal of a motion to dismiss. So every argument that's left in the case, in addition to whatever mootness arguments anyone wants to make, which I'll explain why in a moment we would disagree with, can all be made on remand to the Ninth Circuit. And if people are unhappy ‑‑ or not on remand, but simply when the case returns ‑‑ if people are unhappy with those results, they can bring the case back up to this Court. Roberts So if we do that, if we dismiss as improvidently granted, you still go back and you get your attorney's fees, you get the civil penalties, you get remediation, because the law governing your case would be the existing Ninth Circuit opinion. Fisher Well, if that's where the case ends up when it's over and they bring it back and you deny cert, but there's a much ‑‑ Roberts I was just going to say the case is not going to be over if we dismiss. Fisher No. Roberts Because as you just said, it's interlocutory. Fisher But that's my point, yes. But I want to make one thing very clear. Kennedy But in other words, it goes, under your view, it would go back to the district court? The district court would trial this, and as the Chief Justice said, we know what the law of the case is if the opinion stands. Fisher Well, the law of the case would be the point source. Kennedy And so isn't it fairly clear where we know what the district court must do under the court of appeals decision? Fisher No. All the district court must do under the Ninth Circuit decision is consider this to be a point source, for the reason that Justice Sotomayor mentioned, and that the other side has virtually walked away from that argument anyways. It is a pipe ditch or channel. It's perfectly obvious we're dealing with point sources here. The only question is whether you have this covered by the stormwater rules to the extent they're valid, and that the district court or the Ninth Circuit or whoever would consider in the first instance, and that could come back to this Court. But if I might just explain to this Court, I think it will help the conversation, if I explain exactly what our case looks like going forward. Because we have and will maintain a claim for forward-looking relief for two reasons. One is, for the reason that was mentioned a couple of times in the beginning part of the argument, because we contend that the new rule simply violates the statute. And we have a right to bring a citizen suit for a violation of the Clean Water Act itself, which is to say the language that requires EPA to regulate all district courts associated with industrial activity. Sotomayor So you're disclaiming that you have to go to the court of appeals. You think you can bring a citizen suit. To challenge the validity of the regulation. Fisher Well, I wouldn't put it exactly that way, Justice Sotomayor. What I would say is that we have the power to bring or we have the right to bring a citizen suit to enforce the Act. And if there's a regulation that the other side brings up that says we're, supposedly says, we're exempt from having to get permits, our position is that regulation just simply doesn't fall under 1369v1 for the reasons Judge Pryor just found for the Eleventh Circuit. I sent that up as supplemental authority. It is A. Ginsburg But we didn't know that that is the question. The question of what the statute requires was not decided below. Fisher That's correct, Justice Ginsburg. The Ninth Circuit had no reason to reach it because the regulations on stormwater as then written were absolutely clear that logging activity. Ginsburg And you're not urging that we reach it. Fisher I think the most prudent thing, as I said, is for this Court not to reach that and to let, as you described, to let a lower court look at it first and to bring it back. But if I can finish my question, or my answer to Justice Sotomayor, the reason why that regulation doesn't require us to go to court of appeals in the first instant and actually lets us proceed on a citizen suit is because the only two subsections of 1369b1 that they have mentioned are subsections E and F. Subsection F deals with EPA decisions, quote, issuing or denying a permit. Well, this decision does neither of those things. Secondly, it covers EPA actions that set effluent levels or effluent limitations. And again, for the reasons the Eleventh Circuit just held and other courts have held, this doesn't do that either. So there's nothing in 1369b1 that stands in our way of bringing a citizen suit to enforce the statute on those terms. Kagan Mr. Fisher, why would you proceed that way? It's at least arguable that you're wrong on that. I mean, it's a question as to what 1369 does. And you obviously do have the route of direct review. Why don't you proceed that way with respect to the new regulation? Fisher Well, I think that what we'll do is proceed whatever way we can. Because, you know, either we're supposed to go directly to the Ninth Circuit or any court of appeals, or we're not. And if we are, then we will. And if we're not supposed to go to the court of appeals, as we believe a fair reading of the law, I don't think there's any plain text reading of the law that could go otherwise, then we have the only way we can do this is through a citizen suit. Kagan You think that on your view of 1369, you can't go to the Ninth Circuit. Fisher Exactly. And that's what the Eleventh Circuit just held in a case just like this, where there was a regulation at issue that exempted certain discharges from the permitting program. And the Eleventh Circuit said, case dismissed. You can't bring this directly to us. So we have an ongoing claim for a violation of the statute, which I can't imagine this Court would want to address in the first instance. We also, it's important to understand, have a second claim. And before I describe that second claim, let me describe overall, just remind the Court what exactly the case is about. The case isn't about, as the other side has portrayed many times, all logging roads, all logging roads that may exist in the world or the United States. What the case is about are two very specific kinds of logging roads. One, logging roads that drain themselves by way of pipes, ditches, and channels. Only the small subset of logging roads that do that. And second of all, only logging roads being used for active timber harvesting and hauling. Not roads that just happen to be sitting in the forest, not being used. But only the small subset of logging roads being used for active timber cutting and harvesting. Scalia What does that mean? Fisher It means under Scalia They cut maybe what? Every 10 years? Is that active? Fisher Well, well Scalia What about the nine years in between? Are they being actively used? Fisher No, Justice Scalia. And so under this, the facts of this case, remember, we're on a motion to dismiss. So when Mr. Bishop says one or two weeks out of whatever, we would like to have a record on that, because we don't think that's the reality. But what the case, what we say in our complaint is that they have a contract with the State of Oregon to harvest particular areas and use particular roads to access that timber and to take it out. And the contract actually requires them to use those roads and to maintain their drainage systems. And so our claim, again, just to remind you what our claim is under the statute, is that that harvesting activity can't be thought of in any other way than industrial in nature, and that these roads are associated with that activity. They're designed for that purpose, and they're indispensable to the activity. Now, we have a second argument, even if the Court thought that we couldn't win, or whatever court looks at this, thought we couldn't win on the statute. We have a Chevron Step 2 argument that we will make and have every right to make. Because if I'll beg this Court's indulgence, if this rule that they have just announced on Friday afternoon is not as clear as you might think. So if you start with the language of the rule, which is on page 18, what they have done is they've amended, they've amended the stormwater rules to provide that the only industrial activities associated with logging are sawmills, which are covered elsewhere, and then these four categories of things, rock crushing, gravel washing, log sorting, and log storage. Kennedy, this is page 18, that's the last page? It's page 18, the last page of, at least I hope your copy is the same as mine, but on the PDF that was sent up to the Court. And so I'm reading under where it says stormwater discharges? Yes. And if you go all the way to the bottom, sub 2, facilities classified under SIC 24. Thank you. And they list those four things. And then industry group 242 is the sawmills. So they're saying those are the only industrial activities that are associated with logging. But that doesn't answer our claim. Our claim isn't that logging roads themselves are industrial activities. Our claim is that logging roads are associated with industrial activities. And so we still have a claim that under that, even if those are the only four industrial activities, or sorry, five, those four things plus sawmills, we still have a claim that logging roads are, quote, immediate access roads to those activities. And the definition of immediate access roads, which is unchanged by the new regulation, is at Pet App 40A, the Ninth Circuit quoted it, and I think it was described earlier by my friend, roads which are exclusively or primarily dedicated for the use by the industrial facility. So it's still a mystery to us how logging roads are not primarily for use by even sawmills or these other four things. And indeed, if you look very carefully at EPA's new regulation, in the preamble, on page 6, about two-thirds of the way down the middle of the page, the only sentence here that EPA gives us that even suggests a possible response to the argument I just described is the one that begins with the word unlike. They say, unlike immediate access roads associated with industrial activities, many logging roads, many logging roads, have multiple uses, including recreation and general transportation, and commonly extend over long distance, i.e., may not provide immediate access to an industrial site. So EPA is leaving open our argument. EPA is saying, well, logging roads that are just generally recreational, et cetera, are not immediate access roads. But our claim -- Robertson, I'm sorry. I thought they said that their rules mooted this case. Well, that's what they're standing here today saying. But I'm telling you on the language that they gave us on Friday, it doesn't moot the case. And I can't imagine an argument being made on Monday that hasn't been prepared in any written form based on a written thing that we got on Friday that we have an argument under would moot our case. And particularly, Mr. Chief Justice, and this is my point about going through all this, I can't imagine why this Court would want to touch all this in the first instance, particularly without supplemental briefing. But it seems to me to make every sense to let the Ninth Circuit address our argument first.  Well, if we dismiss as improvidently granted, are you suggesting that the Ninth Circuit would then be a court to consider this? I'm just thinking if we vacate, perhaps another court will consider it. But if we dismiss as improvidently granted, the Ninth Circuit will quite reasonably think they're done. No, because we have a forward-looking the first thing we'll tell the Ninth Circuit is we want to do it. Well, I mean, they're done in terms of their interpretation of the regulation and the applicable law. I think only as to the backward-looking regulation. But now we have our complaint, you know, as a citizen suit does. But then why isn't your concerns met if we vacate for the court of appeals to consider in the first instance the extent to which this regulation may bear on its opinion? Well, I think that gets you very close to the same place, Justice Kennedy. I'm just saying there's no reason to vacate because the Ninth Circuit's point source holding is so self-evidently right that I don't know why you'd go to the trouble to do that. It makes the case simpler going forward. The Ninth Circuit had, of course, EPA's views before it. I don't know if I'm the Ninth Circuit why I would reconsider my ruling in light of this new regulation. Do you mean the backward-looking ruling? I mean the ruling in the decision that they issued that's before us today. I don't know that they would reconsider that, but the main event going forward is the new rule, because a citizen suit seeks cessation of ongoing violations of the Act, and that remains the core of our lawsuit, which is still we can take. Sotomayor, that's the whole point, which is, if you go back, what's the value of the backward-looking construction if what you're seeking is injunctive relief that has to be based on the new rule? It doesn't matter very much, Justice Sotomayor. There's two ways in which it might matter a little bit. One is, if we want to press a claim for any kind of civil penalties or remediation, the backward-looking thing would matter. We have to decide whether we want to do that. The second way it would matter would be it would provide a helpful baseline for judging the new rule in the totality of EPA action, which brings me to my — which brings me back to the argument I was describing, which would be our Chevron Step 2 argument, that EPA has simply either left this argument open. I still — it is still a mystery to us what EPA thinks about our real argument, which is that active hauling, logging roads, when they're being used for active harvesting and hauling, are subject to the Act because they're plainly associated with industrial activity. And if EPA later on came out and said, no, no, no, we mean to exclude that, too, then we respectfully submit EPA would still have a lot of explaining to do. First of all, we would very much wonder why log sorting, log storage, gravel washing and rock crushing are industrial activities, but mechanized timber harvesting with 20-ton pieces of machinery is not. We'd also wonder why this stuff isn't industrial activity, where construction activity, landfill operations, surface mining operations that have all the same attributes, heavy machinery, et cetera, are, as the EPA itself admits, industrial activity. But somehow, somehow, logging, which has all the same attributes, isn't. And so that's what our claim is going forward. Now, I'm not asking this Court to address that because I'm not sure this Court wants to get into all of this stuff yet. But what I am telling this Court is there's no basis whatsoever to find this case is moot. Or I don't think this Court would want to touch any of the arguments being made here without further briefing, at least as to the new rule. We do think it's absolutely clear we're dealing with point sources. We do think it's absolutely clear, based on the language of 1369b1, that there just can't be any way that there's a jurisdictional or whatever other kind of problem you want to label it with us bringing a claim based on the statute itself. The new regulation just simply doesn't fall into those. So if this Court dismisses the case, we'll go to the Ninth Circuit and tell them, we want to go forward for the following reasons. And if anybody's unhappy with what happens in the Ninth Circuit, obviously, we can file or they can file petitions for cert in this Court. Let me just say one last thing to this Court about what we view as really the arbitrary and capricious nature of EPA's new rule and why you shouldn't touch it. Remember, I said, and this is in EPA's regulations themselves, that construction activity, any construction activity in a site 5 acres or more is industrial activity. So if a developer buys a parcel of forested land and wants to build a subdivision in there, and the first thing the developer does is punch in some roads and drainage systems and cut some trees down to make room for the houses, that is covered by the EPA's stormwater rules. But if a logging company does precisely the same thing, EPA's position seems to be it's not covered. And not only is it not covered if it happens on public land, but I think at least the implication of my friend's position is that for logging companies, of which there are many in the Northwest, that own their own land, own their own giant pieces of forest land, and that are not open to the public, that are not open to hunters, that are not open to recreation, but they have their own logging roads on their own private lands that nobody can use but them, I still think his position is that's not covered by the Act. And finally, EPA has one other thing that I want to point out to the Court about this new rule. And it's, again, got our heads — gets our heads scratching as to what EPA is really doing here. EPA says twice in the preamble to the new rule, once on page 7 and also on page 12, that it, quote, ''retains the authority to designate at least some logging roads as covered by its so-called point phase 2 system.'' What the phase 2 system is, is under section 1342P, which is the stormwater amendments to the Act, it's the category of point source discharges that EPA says are not covered — are not industrial activity, associated with industrial activity, but we, nonetheless, are going to require certain things of them. This is the critical point. EPA says this twice. Well, the only authority EPA would have to regulate any logging roads, discharges from logging roads, is if they're point sources, because you don't get into the phase 2 program, you don't get into the stormwater amendments unless you have a point source. If it's a non-point source, then as my friend has pointed out quite at length in his briefs, it's entirely up to the States, and EPA has nothing to say about that. Scalia, I'm looking at page 7, and it doesn't say the authority designated additional roads. It says additional stormwater discharges. Right. Now, that could be stormwater discharges that have nothing to do with logging. I think if that's all we had, Justice Scalia, it might be a little bit ambiguous, although, of course, this is in the context of logging roads. But look at page 12, and this is the final — this is the very end of the preamble. The last sentence, EPA believes that stormwater discharges from forest roads, including logging roads, should be evaluated under section 402p6. The only authority EPA has for doing that is if they're point sources. Whereas, EPA has filed a brief in this case that says there are at least some of them are not. I don't know if it's walking away from that or is planning on walking away from that. But again, there's a variety of questions I think that EPA should have to address and answer. Did you have one? I'm sorry. That EPA should have to address and answer before any court does anything based on this new rule. Ginsburg. But if you were challenging the new rule, you would have EPA as your adversary. The format of this case now is we have — we have Decker on one side and you on the other, and the EPA is not in the lawsuit. Well, EPA, of course, is an amicus, Justice Ginsburg, and EPA has an ongoing right to intervene in any citizen suit. That's a statutory right, and there's a statutory notice that any plaintiff in a citizen suit is required to provide to EPA, which we did provide to EPA. And so EPA has every right to intervene in the case at any point as a party. Does EPA have the right to intervene and dismiss the action? Well, I think that EPA has a right to intervene and make an argument that the case is moot or any other substantive argument they would like to make back in the Ninth Circuit. And of course, mootness, if it's genuinely moot, which for all these reasons we think, of course it's not, but mootness is an Article III principle that an amicus could raise and a court would be bound to consider on its own. Scalia, they're just intervening. It's not like what happens in the suits for fraud against the government where they take over the litigation. Right. They don't take it over, they just intervene. I think that's what would happen, yes. I mean, you could ask them how they'd like to proceed, but I assume that's what would happen, and I assume the defendants in the case would remain the same. So I'm happy to answer any other questions about what the case looks like or what you ought to do, but otherwise I'll submit it. Thank you, counsel. Mr. Bishop, you have 4 minutes remaining. Thank you. We're not asking you to adjudicate the new rule. I'm not sure why we're hearing all of this about the details of the new rule. What we're asking you to do is to get rid of this case. In getting rid of this case on the basis of the stormwater rule, it will eliminate one of the arguments that the plaintiffs will make in a challenge to the new rule. It will simplify that challenge. What it will do is to get rid of this case and get rid of a Ninth Circuit opinion that really put the Court in a position of overriding what EPA has been saying consistently since 1976, consistent position that collected forest road runoff is not point source, and since 1980 that logging is not industrial activity and these roads are not associated with industrial activity. And for my clients, that is — has a great deal of value, particularly since, as Mr. Fisher has admitted, what he really wants here is to be back in the Ninth Circuit seeking not only, apparently, relief, backward-looking relief, but also prospective relief. If there are no further questions, I'll submit. Roberts. Thank you, counsel. The case is submitted.